UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEE F. HANKINS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2494** |
| **YELLOW FIN MARINE SERVICES, LLC** | **SECTION "B"(1)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiff's "Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction." (Rec. Doc. No. 12). Defendant filed a memorandum in opposition arguing numerous grounds in support of this Court's recognition of subject-matter jurisdiction over the claim. (Rec. Doc. No. 14). For the reasons outlined below,

**IT IS ORDERED** that the Motion is **DENIED**.

I.   <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

This case arises out of a number of incidents that allegedly occurred while Lee Hankins ("Plaintiff" or "Hankins") was working aboard vessels owned by Defendant, Yellow Fin Marine Services, LLC ("Defendant" or "Yellow Fin"). First, Plaintiff, a former employee of Yellow Fin, claims that he injured his leg, back, and body in June of 2013 as a result of a fall on the M/V K4, a vessel he was asked to help prepare for voyage. (Rec. Doc. No. 1 at 1-2). Then, while obtaining treatment for these injuries, Hankins allegedly developed congestive heart failure. (Rec. Doc. No. 1 at 12). He

eventually went back to work in January of 2014 while continuing to take heart medication. (Rec. Doc. No. 1 at 3).

In July of 2014, Hankins claims he was working on the M/V K10 when he witnessed an illegal fuel transfer to an unaffiliated boat. (Rec. Doc. No. 1 at 3). Hankins claims that the M/V K10's captain threatened to kill him if he reported the fuel transfer. (Rec. Doc. No. 1 at 3). When Hankins ultimately reported it, Yellow Fin fired the captain, which allegedly caused the ship's crew to retaliate against Hankins. (Rec. Doc. No. 1 at 3). Plaintiff claims that constant harassment by the crew caused him to become "severely depressed to the point where he required hospitalization" at River Oaks Medical Hospital. (Rec. Doc. No. 1 at 3). When Plaintiff finally returned to work, he was transferred to the M/V K4 where the harassment purportedly continued. (Rec. Doc. No. 1 at 4).

While working aboard the K4, one of the crew members allegedly stole Hankins' depression, diabetes, and heart medications. (Rec. Doc. No. 1 at 4). Hankins claims that the ship did not return to port or secure delivery of replacement medications. (Rec. Doc. No. 1 at 4). This lack of medication for approximately two months apparently caused deterioration of Hankins's physical and mental health. (Rec. Doc. No. 1 at 4). Thereafter, Plaintiff required implantation of a cardiac defibrillator and a pacemaker, which now prevent him from working. (Rec. Doc. No. 1 at 4). As a result of the above-described injuries, Hankins seeks damages for physical

and mental pain and suffering, loss of wages and earning capacity, and permanent physical disability. (Rec. Doc. No. 1 at 2, 5). He also seeks maintenance and cure. (Rec. Doc. No. 1 at 6). Due to the allegedly willful misconduct of Yellow Fin employees, Hankins requests punitive damages and attorney's fees. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1333.

    Yellow Fin provides a different account of the events leading up to Hankins's inability to work. In its answer, Yellow Fin asserts a counterclaim seeking $7,244.21 plus interest and costs for Hankins's alleged failure to pay on a promissory in that amount. (Rec. Doc. No. 11 at 13). Yellow Fin alleges that it loaned the money to Hankins to help him deal with a number of personal issues. First, Defendant claims to have lent $1,500 to Hankins to bail him out of jail following two arrests. (Rec. Doc. No. 11 at 12). The first arrest allegedly occurred because Hankins was in possession of a firearm as a convicted felon. (Rec. Doc. No. 11 at 12). In connection with that arrest, the police searched Hankins's home where they apparently found human remains, which Defendant contends contributed to Hankins's mental and physical instability. (Rec. Doc. No. 14 at 1, 8).

    Thereafter, Hankins allegedly borrowed $500 to travel to Louisiana for work after his release from jail. (Rec. Doc. No. 11 at 12). When he returned to work, Defendant claims that Hankins "was in significant distress," so Yellow Fin arranged for him to

obtain medical treatment at River Oaks. Defendant then loaned him another $5,000 to pay for an attorney to help him with his legal issues. (Rec. Doc. No. 11 at 12). Following all of the loans, Hankins and Yellow Fin executed a promissory note evidencing the amount of money advanced to Hankins. (Rec. Doc. No. 14 at 2). Defendant claims that it loaned the money to Hankins as an advance on his maritime wages, which is reflected by the fact that Hankins was required to make payments on the 5th and 20th of each month, his regularly-scheduled pay days. (Rec. Doc. No. 14 at 2-3). Moreover, Yellow Fin did not charge interest on the loans. (Rec. Doc. No. 14 at 3). Defendant claims that Hankins never made any payments on the note. (Rec. Doc. No. 13 at 3).

## II.  THE PARTIES' CONTENTIONS

Hankins's motion argues that the Court must dismiss Defendant's counterclaim because it does not have subject-matter jurisdiction over the claim. (Rec. Doc. No. 12 at 1). Plaintiff's argument rests on the contentions that the claim is not a compulsory counterclaim under Rule 13 of the Federal Rules of Civil Procedure, and that it lacks an independent basis for subject-matter jurisdiction. (Rec. Doc. No. 12-1 at 2-3). Accordingly, Plaintiff maintains that the Court has no jurisdiction over the counterclaim, and that it must be dismissed.

Defendant's memorandum in opposition contends that this Court has independent subject-matter jurisdiction over the counterclaim

because it falls within the Court's maritime jurisdiction under 28 U.S.C. § 1333. (Rec. Doc. No. 14 at 4). Yellow Fin argues that the claim falls within the Court's maritime jurisdiction because it arises out of the maritime employment relationship. (Rec. Doc. No. 14 at 4). In the alternative, Yellow Fin seems to assert two other arguments. First, that even if this Court deems the claim outside the scope of 28 U.S.C. § 1333, it qualifies as a compulsory counterclaim and thus falls within this Court's jurisdiction. (Rec. Doc. No. 14 at 6). Second, that that even if it is not a compulsory counterclaim, it is a permissive counterclaim that falls within the Court's supplemental jurisdiction. (Rec. Doc. No. 14 at 7). Accordingly, Defendant maintains that this Court should deny Plaintiff's motion.

### III. LAW AND ANALYSIS

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of a case or a particular claim for lack of subject-matter jurisdiction. "The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)." *Powell v. Hunter*, 2012 WL 253105, No. 11-1640, at *2 (E.D. La. Jan. 25, 2012). However, when considering a motion to dismiss under Rule 12(b)(1), courts may look to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.*

### a. Subject-Matter Jurisdiction Over Counterclaims

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). By statute, Congress has delineated two primary bases for original subject-matter jurisdiction in federal courts: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331-1332. Additionally, in 1990, Congress enacted the supplemental jurisdiction statute, which provides in part: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Accordingly, certain claims may remain in federal court even if they do not meet the requirements for original jurisdiction so long as they form the same "case or controversy" as the claims with original jurisdiction.

The application of § 1367 is clear with respect to compulsory counterclaims. Compulsory counterclaims are those that "arise out

of the transaction or occurrence that is the subject matter of the opposing party's claim" and must be plead or waived—outside of certain exceptions not relevant here. Fed R. Civ. P. 13(a). A compulsory counterclaim by definition meets the "same transaction or occurrence" standard, meaning it also falls under the broader "case or controversy" standard of § 1367. Wright & Miller, et al, Federal Practice and Procedure § 3567.1 ("It is absolutely clear that the common nucleus concept encompasses claims that arise from the same 'transaction or occurrence' as the jurisdiction-invoking claim."). Accordingly, all compulsory counterclaims fall within the federal courts' supplemental jurisdiction. *CheckPoint Fluidic Systems Int'l, Ltd., v. Guccione*, 2012 WL 195533, No. 10-4505, at *4 (E.D. La. Jan. 23, 2012) ("When a counterclaim is compulsory it is within the supplemental jurisdiction of the court because by definition it must arise out of the same transaction or occurrence as the original claim.").

A permissive counterclaim, defined as any counterclaim that is not compulsory, is one that a party may, but is not required to, include in a pleading. Fed. R. Civ. P. 13(b). Prior to the passage of § 1367 in 1990, courts, including the United States Court of Appeals for the Fifth Circuit, required permissive counterclaims to have an independent jurisdictional basis. *See, e.g., Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1360 (5th Cir. 1979). However, the plain language of § 1367

evidences an intent to do away with this distinction between compulsory and permissive counterclaims. The statute specifically states that it applies to "*all other claims* that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (emphasis added).

Though the Fifth Circuit has yet to speak on the issue, the consensus among courts and commentators is that "Article III's case-or-controversy standard is the jurisdictional limit for counterclaims," not Rule 13's transaction-or-occurrence standard. *Global NAPs, Inc. v. Verizon New England, Inc.*, 603 F.3d 71, 87 (1st Cir. 2010). *See also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212, (2d Cir. 2004); *Channel v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996); Wright & Miller, et al, <u>Federal Practice and Procedure</u> § 3567.1. Thus, the applicability of § 1367 turns on whether the counterclaim forms part of the same case or controversy, not whether it is compulsory or permissive. A compulsory counterclaim will always fall under § 1367 for the reasons delineated above, but a permissive counterclaim may or may not, depending on whether it is part of the same case or controversy as the claims invoking the court's original jurisdiction. If a permissive counterclaim does not fall within the parameters of § 1367, then it must have an independent jurisdictional basis. If it does not have an independent

jurisdictional basis, then the Court must dismiss the claim for lack of subject-matter jurisdiction.

The parties' briefs place significant emphasis on whether Yellow Fin's counterclaim is compulsory or permissive, but for the reasons enumerated above, the distinction is largely irrelevant for jurisdiction purposes. Regardless of whether the counterclaim is permissive or compulsory, this Court has jurisdiction over the claim if it meets the case-or-controversy standard for supplemental jurisdiction.

### b. Whether Yellow Fin's Counterclaim Forms the Same Case or Controversy as Those Claims Asserted by Hankins

The Supreme Court of the United States defined the case-or-controversy standard while explaining the outer limits of what was then known as "pendent jurisdiction" in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). The Court defined a single case or controversy as one in which all the claims "derive from a common nucleus of operative fact," such that one would expect them to be tried in a single judicial proceeding. *Gibbs*, 383 U.S. at 725. "Legislative history makes clear that Congress intended to codify the result in [*Gibbs*]" with the passage of § 1367. Wright & Miller, et al, Federal Practice and Procedure § 3567.1. Since then, courts have found that a "loose factual connection between the claims is generally sufficient" to meet the common-nucleus standard. *Guccione*, 2012 WL 195533 at *3. Additionally, "[a]

court's determination of whether to exercise supplemental jurisdiction is guided by considerations of judicial economy, convenience and fairness to litigants." *Id*.

Here, while different allegations form the bases of each of Hankins's claims and Yellow Fin's counterclaim, all of the allegations form a common nucleus of facts. The main issues in this litigation are determining the events that took place between the summer of 2013 and December of 2014 and how those events impacted the physical and mental health of Hankins. At the center of at least one of Hankins' claims will be the causes of his emotional distress and the deterioration of his health, specifically: the causes of his depression and anxiety and the causes for the implementation of his pacemaker and cardiac defibrillator. While Plaintiff maintains that harassment by fellow crew members led to these issues, Yellow Fin contends that it was the stress from his arrests that caused Hankins's problems. Those arrests and the subsequent legal issues are what allegedly led Yellow Fin to loan Hankins money—the money they now seek to recover via the counterclaim. Though litigation of the counterclaim will focus on why Yellow Fin lent Hankins the money, the parameters of the promissory note, and whether or not Hankins repaid the loan, the facts underlying those issues will also come up in the litigation over Hankins' claims against Yellow Fin.

Moreover, both claims stem from Hankins's employment with Yellow Fin. One would logically expect disputes between an employer and employee to be tried in a single proceeding, especially considering Yellow Fin's allegation that the loans were an advance on Hankins's regular wages. Deciding both sets of claims in a single proceeding will also facilitate judicial economy and convenience by avoiding redundant proceedings. Therefore, both sets of claims arise from a common nucleus of operative fact and Yellow Fin's counterclaim falls under the umbrella of this Court's supplemental jurisdiction. As such, this Court need not determine whether an independent jurisdictional basis exists for the counterclaim.

## IV. CONCLUSION

For the reasons outlined above,

**IT IS ORDERED** that the motion to dismiss is **DENIED**. Yellow Fin's counterclaim forms the same case or controversy as Plaintiff's claims, meaning it falls within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

New Orleans, Louisiana, this 14th day of December, 2015.

_____
UNITED STATES DISTRICT JUDGE